# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| DARRES CHINSONG PARK | * | |
| Petitioner | * | |
| v | * | Civil Action No. ELH-13-3242 |
| WARDEN TIMOTHY STEWART | * | |
| Respondent | * | |
| | *** | |

## MEMORANDUM

Darres Chinsong Park, the self-represented petitioner, is a prisoner confined to the custody of the Federal Bureau of Prisons ("BOP") and currently assigned to the Federal Correctional Institution ("FCI") in Cumberland, Maryland. While Park was held at the United States Penitentiary in McCreary, Kentucky ("USP McCreary"), he was subjected to drug testing.[1] Claiming he was denied due process in connection with that drug testing, Park has filed a petition for habeas corpus relief. He asks the Court to vacate the sanctions imposed by the BOP, restore his good conduct credits, and remove from his BOP file the Incident Report in connection with the drug testing. ECF 1 at 8.

Respondent, Warden Timothy Stewart, has filed a motion to dismiss or for summary judgment (ECF 4), along with a Memorandum of Law and numerous exhibits (collectively, the "Motion"). Park opposes the motion. ECF 8. No hearing is necessary to resolve the matter. *See* Local Rule 105.6. For the reasons that follow, the habeas corpus petition shall be denied and a certificate of appealability shall not issue.

---

[1] Park does not allege in his petition that he was confined at the United States Penitentiary in McCreary, Kentucky. That information derives from information provided by respondent. *See* ECF 4 at Ex. 1B, p. 3.

**Factual Background**

In 2002 and 2008, Park was convicted in the United States District Court for the Western District of Washington of "Conspiracy to Commit Bank Robbery" and "Felon in Possession of a Firearm," respectively. He is serving an aggregate term of 15 years' imprisonment. ECF 4-3, Declaration of Gary Mehler, BOP Discipline Hearing Officer (Gov't. Ex. 1) at ¶ 4.[2]

While incarcerated at USP McCreary, Park was subjected to a urinalysis test on November 1, 2011. *Id.* ¶ 6.[3] On November 2, 2011, BOP staff sent the specimen to the National Toxicology Laboratories for further testing. ECF 4-10 (Gov't. Ex. 2). On that date Park, signed the chain of custody form indicating the container sent for further testing was sealed with a tamper-proof seal in his presence and that the specimen number on the container (BOP0001399580) matched the number on the form. *Id.* The specimen was received by the National Toxicology Laboratories on November 4, 2011; positive results for the presence of opiates (Codeine and Morphine) were recorded by the lab on November 7, 2011. ECF 4-11 (Gov't. Ex. 3); ECF 4-3 (Gov't. Ex. 1) at ¶ 7; ECF 4-6 (Gov't. Ex. 1C). Additionally, the lab certified that the specimen received from USP McCreary was handled and analyzed in accordance with all applicable requirements and that the test results indicated were the results for that specimen. ECF 4-11 (Gov't. Ex. 3). Moreover, the specimen referred to in the lab results was identified as specimen number BOP0001399580, the same identification number indicated on the chain of custody form signed by Park. *Id.*; *see also* ECF 4-10 (Gov't. Ex. 2).

---

[2] Mehler conducted the disciplinary hearing at issue here.

[3] The initial test was performed using a Pharmatech Instant Quick Screen Cup. ECF 4 at Ex. 1C. The device is a cup that protects the tester from exposure to urine, has built-in drug screening technology, and requires no transfer to another container in the event the specimen needs to be transported for confirmation of the results. *See* http://www.phamatech.com/p-quickscreen-cup1.html.

On November 30, 2011, "B. Baker, SIS Technician"[4], sent a memorandum to medical staff at USP McCreary indicating that two tests performed on Park's urine sample had proved positive for opiates. ECF 4-12 (Gov't. Ex. 4). Baker asked medical staff to review Park's medical record to determine if he had been prescribed the type of medication, codeine and morphine, found in his urine. *Id*. Medical staff confirmed they had reviewed Park's medical record and found no evidence indicating codeine or morphine had been prescribed for him. *Id*. On the same date this confirmation was issued by medical staff, Park was served with an Incident Report alleging he had used narcotics not prescribed to him by medical staff. ECF 4-6 (Gov't. Ex. 1C). In addition to the Incident Report, Park was provided with a copy of the laboratory report and the medical staff response, the evidence relied upon to charge him with a disciplinary violation. *Id*. Park's only statement when he was served with the Incident Report was he could not believe "it took medical that long to respond." *Id.*

As noted, the incident report charging Park with a rules violation was written on November 30, 2011. In particular, Park was charged with violating Code 112, which prohibits the "use of any narcotic, or related paraphernalia not prescribed for the individual by the medical staff." ECF 4-3, ¶ 9.

On December 1, 2011, Park was provided with notice of a hearing, and the hearing took place on January 11, 2012. ECF 4-7 (Gov't. Ex. ID). The notice advised Park, *inter alia*, that he had a right to present witnesses and offer documentary evidence. Park elected to have a staff member represent him at the hearing, but listed no witnesses. ECF 4-8 (Gov't. Ex. 1E). Park testified at the hearing and denied using the narcotics indicated in the test results. Apart from his denial, Park offered no other evidence, nor did he raise a claim regarding the chain of custody of

---

[4] "SIS" refers to Special Investigative Services.

the specimen. ECF 4-9 (Gov't. Ex. 1F). After consideration of all the evidence, including Park's denial, Mehler, the Disciplinary Hearing Officer, found Park guilty of violating BOP regulations by using a narcotic not prescribed to him by medical staff. *Id.*, *see* ECF 4-3 at ¶¶ 12-14. As a penalty, Park lost 41 days of good conduct credit, was placed on disciplinary segregation for 30 days, and lost visiting privileges for one year. *Id.* at ¶ 15; *see also* ECF 4-9 (Gov't. Ex. F).

Park complains that the "SIS technician" did not request medical confirmation until November 30, 2011. Such confirmation was required to ascertain if Park had been prescribed medication that would have rendered the test results positive for those substances. Park also claims that the delay between the time the test results were received and the date the incident report was written violated 28 C.F.R. §541.5 as well as his right to due process. Additionally, he states that the chain of custody violated the applicable regulation and that BOP staff have never accurately addressed his assertions, "despite clear evidence." As noted, Park asks the Court to restore the good conduct credits revoked as a penalty for the disciplinary rule violation, to vacate the sanctions that were imposed, and to remove the incident report from his record. ECF 1 at 8.

**Standard of Review**

Respondent's motion is styled as a motion to dismiss under Fed. R. Civ. P. 12(b)(6) or, in the alternative, for summary judgment under Fed. R. Civ. P. 56. A motion styled in this manner implicates the court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure. *See Kensington Vol. Fire Dept., Inc. v. Montgomery County*, 788 F. Supp. 2d 431, 436-37 (D. Md. 2011). Ordinarily, a court "is not to consider matters outside the pleadings or resolve factual disputes when ruling on a motion to dismiss." *Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007). However, under Rule 12(b)(6), a court, in its discretion, may consider matters

4

outside of the pleadings, pursuant to Rule 12(d). If the court does so, "the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). When the movant expressly captions its motion "in the alternative" as one for summary judgment, and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur; the court "does not have an obligation to notify parties of the obvious." *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998).

In contrast, a court may not convert a motion to dismiss to one for summary judgment *sua sponte*, unless it gives notice to the parties that it will do so. *See Laughlin*, 149 F.3d at 261 (stating that a district court "clearly has an obligation to notify parties regarding any court-instituted changes" in the posture of a motion, including conversion under Rule 12(d)); *Finley Lines Joint Protective Bd. Unit 200 v. Norfolk So. Corp.*, 109 F.3d 993, 997 (4th Cir. 1997) ("[A] Rule 12(b)(6) motion to dismiss supported by extraneous materials cannot be regarded as one for summary judgment until the district court acts to convert the motion by indicating that it will not exclude from its consideration of the motion the supporting extraneous materials.").

A district judge has "complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it." 5C WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 1366, at 159 (3d ed. 2004, 2011 Supp.). This discretion "should be exercised with great caution and attention to the parties' procedural rights." *Id.* at 149. In general, courts are guided by whether consideration of

5

extraneous material "is likely to facilitate the disposition of the action," and "whether discovery prior to the utilization of the summary judgment procedure" is necessary. *Id.* at 165-67.

Ordinarily, summary judgment is inappropriate "where the parties have not had an opportunity for reasonable discovery." *E.I. du Pont de Nemous v. Kolon Indus., Inc.*, 637 F.3d 435, 448-49 (4th Cir. 2011). However, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party has made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996)). To raise adequately the issue that discovery is needed, the non-movant typically must file an affidavit or declaration pursuant to Rule 56(d) (formerly Rule 56(f)), explaining why, "for specified reasons, it cannot present facts essential to justify its opposition," without needed discovery. Fed. R. Civ. P. 56(d); *see Harrods*, 302 F.3d at 244-45 (discussing affidavit requirement of former Rule 56(f)) Notably, "'Rule 56(d) affidavits cannot simply demand discovery for the sake of discovery.'" *Hamilton v. Mayor & City Council of Baltimore*, 807 F. Supp. 2d 331, 342 (D. Md. 2011) (quoting *Young v. UPS*, No. DKC-08-2586, 2011 WL 665321, at *20, 2011 U.S. Dist. LEXIS 14266, at *62 (D. Md. Feb. 14, 2011)). "Rather, to justify a denial of summary judgment on the grounds that additional discovery is necessary, the facts identified in a Rule 56 affidavit must be 'essential to [the] opposition.'" *Scott v. Nuvell Fin. Servs., LLC*, 789 F. Supp. 2d 637, 641 (D. Md. 2011) (alteration in original) (citation omitted). A non-moving party's Rule 56(d) request for additional discovery is properly denied "where the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment." *Strag v. Bd. of Trs., Craven Cmty. Coll.*, 55 F.3d 943, 954 (4th Cir. 1995); *see*

6

*Amirmokri v. Abraham*, 437 F. Supp. 2d 414, 420 (D. Md. 2006), *aff'd*, 266 F. App'x. 274 (4th Cir.), *cert. denied*, 555 U.S. 885 (2008).

If a non-moving party believes that further discovery is necessary before consideration of summary judgment, the party fails to file a Rule 56(d) affidavit at his peril, because "'the failure to file an affidavit . . . is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate.'" *Harrods,* 302 F.3d at 244 (citations omitted). But, the non-moving party's failure to file a Rule 56(d) affidavit cannot obligate a court to issue a summary judgment ruling that is obviously premature. Although the Fourth Circuit has placed "'great weight'" on the Rule 56(d) affidavit, and has said that a mere "'reference to Rule 56(f) [now Rule 56(d)] and the need for additional discovery in a memorandum of law in opposition to a motion for summary judgment is not an adequate substitute for [an] affidavit,'" the appellate court has "not always insisted" on a Rule 56(d) affidavit. *Id.* (internal citations omitted). According to the Fourth Circuit, failure to file an affidavit may be excused "if the nonmoving party has adequately informed the district court that the motion is premature and that more discovery is necessary" and the "nonmoving party's objections before the district court 'served as the functional equivalent of an affidavit.'" *Id.* at 244-45 (internal citations omitted).

Plaintiff has not filed an affidavit under Rule 56(d). Moreover, I am satisfied that it is appropriate to address the defendant's motion as one for summary judgment.

Summary judgment is governed by Fed. R. Civ. P. 56(a), which provides, in part: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion. "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the

7

parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 247-48 (1986) (emphasis in original).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court must "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in [his] favor without weighing the evidence or assessing the witness credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002). Because plaintiff is self-represented, his submissions are liberally construed. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). But, the court must also abide by the "'affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial.'" *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993), and citing *Celotex Corporation v. Catrett*, 477 U.S. 317, 323–24 (1986)).

**Discussion**

The crux of Park's claim is that the 24 hour requirement of 28 C.F.R. §541.5(a) was not followed in this case. ECF 1. The regulation at issue provides, in pertinent part, as follows:

> (a) Incident report. The discipline process starts when staff witness or reasonably believe that you committed a prohibited act. A staff member will issue you an incident report describing the incident and the prohibited act(s) you are charged with committing. *You will ordinarily receive the incident report within 24 hours of staff becoming aware of your involvement in the incident*. (Emphasis supplied).

Specifically, Park takes issue with the length of time (23 days) it took for his medical records to be reviewed upon receipt of the lab results. ECF 8 at p. 2. He states there were no

8

staff shortages, riots, or lockdowns which would explain the delay. *Id*. In short, Park takes the position that an incident report must be issued within 24 hours of the lab results being returned to USP McCreary. It is less clear how the 23 day period contributes to any issue regarding the chain of custody which Park claims was broken because of the delay.[5]

Respondent maintains that the 24 hour requirement is not mandatory and points to the word "ordinarily" and its meaning as the basis for that interpretation. ECF 4-1, Memorandum at 10. Specifically, respondent asserts states that the word "ordinarily" is an adverb, meaning "as a general rule or usually." *Id*. (citing *The American Heritage Dictionary* at p. 875 (2nd College Ed. 1991)). In any event, respondent asserts that the 24 hour period referenced in the regulation began on November 30, 2011, when medical staff at USP McCreary confirmed there was no documentation of Park being prescribed medication that would result in the opiate-positive test result and Park received the incident report on that day. ECF 4-1, Memorandum at 11. In other words, until it was ascertained that Park had not been prescribed the medications found in his urine by the lab, there was no basis for an incident report. Thus, staff "became aware" of the violation on November 30, 2011, the date the incident report was issued and served on Park. This interpretation of the regulation is logical and Park's claim regarding the timing of his notice fails.

Park's claim that his due process rights were violated lacks merit. Prisoners retain rights under the Due Process Clause, but prison disciplinary proceedings are not part of a criminal prosecution and the full array of rights due a defendant in such proceedings does not apply. *See Wolff v. McDonnell*, 418 U.S. 539, 556 (1974) (*citing Morrissey v. Brewer*, 408 U.S. 471, 488 (1972)).

---

[5] There is no evidence suggesting that the integrity of the chain of custody of the urine specimen was somehow not maintained in this case.

The basic due process standards applicable to a prison disciplinary proceeding are set forth in *Wolff*, 418 U.S. 539. As the Supreme Court explained in *Wolff*, although prisoners "may not be deprived of life, liberty or property without due process of law," their due process rights remain "subject to restrictions imposed by nature of the regime to which they have been lawfully committed." *Id*. at 556. Accordingly, "there must be mutual accommodation between institutional needs and objectives and the provisions of the Constitution that are of general application." *Id*.

Nevertheless, in prison disciplinary proceedings, where an inmate faces the possible loss of diminution credits, he is entitled to certain due process protections. These include: (1) advance written notice of the charges against him; (2) a hearing where he is afforded the right to call witnesses and present evidence, so long as doing so is not "unduly hazardous to institutional safety or correctional goals"; (3) the opportunity to have non-attorney representation when the inmate is illiterate or the disciplinary hearing involves complex issues; and (4) an impartial decision-maker and a written statement of the evidence relied on and the reasons for taking any disciplinary action. *See Wolff*, 418 U.S. at 564-571. However, there is no constitutional right to confront and cross-examine witnesses, nor a right to counsel. *See Baxter v. Palmigiano*, 425 U.S. 308, 322 (1976); *Brown v. Braxton*, 373 F.3d 501, 505-06 (4th Cir. 2004).

As long as the hearing officer's decision contains a written statement of the evidence relied upon, due process is satisfied. *See Baxter*, 425 U.S. at 323 n. 5. Put another way, substantive due process is satisfied if the disciplinary hearing decision was based upon "some evidence." *Superintendent, Mass. Correctional Institution v. Hill*, 472 U.S. 445, 455 (1985). A disciplinary hearing officer's findings of fact will be disturbed only when unsupported by any evidence, or when wholly arbitrary and capricious. *Id*. at 456; *see also Baker v. Lyles*, 904 F.2d

925, 933 (4th Cir.1990). As long as there is some evidence in the record to support a disciplinary committee's factual findings, a federal court will not review their accuracy.

Park has presented no evidence that the disciplinary proceedings were wholly arbitrary and capricious. His assertion that the 24 hour notice requirement was violated is unsupported by any objective evidence. Nor does he dispute that there was "some evidence" to support the guilty finding by the disciplinary hearing officer. Thus, based on the undisputed facts before the Court, respondent is entitled to summary judgment.[6] A separate Order follows.

Date: April 10, 2014                              /s/
                                            Ellen Lipton Hollander
                                            United States District Judge

---

[6] Because petitioner has not made a substantial showing of the denial of a constitutional right, a certificate of appealability shall not issue. *See Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (requiring petitioner to demonstrate reasonable jurists may differ); *Miller-El v. Cockrell*, 537 U.S. 327 (2003) (issues presented are adequate to deserve encouragement to proceed further).